EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| FirstBank de Puerto Rico<br>    Demandante-Peticionario<br><br>       v.<br><br>Municipio de Aguadilla<br>    Demandado-Recurrido | Certiorari<br><br>2001 TSPR 6 |

Número del Caso: CC-1999-937

Fecha: 17/enero/2001

Tribunal de Circuito de Apelaciones:

                Circuito Regional I

Juez Ponente:

                Hon. Charles A. Cordero Peña

Abogados de la Parte Peticionaria:

                Lcdo. Juan Acosta Reboyras<br>                Lcdo. Jorge S. Carlo Marrero

Abogado de la Parte Recurrida:

                Lcdo. Gregorio Igartúa de la Rosa

Abogados de la Asociación de Bancos de P.R.:

                Lcdo. Charles Bimbela<br>                Lcdo. Enrique Silva

Materia: Revisión sobre Deficiencia Contributiva

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

FirstBank de Puerto Rico

    Demandante-peticionario

        vs.                    CC-1999-937     CERTIORARI

Municipio de Aguadilla

    Demandado-recurrido

OPINIÓN DEL TRIBUNAL EMITIDA POR EL JUEZ ASOCIADO SEÑOR REBOLLO LÓPEZ

San Juan, Puerto Rico, a 17 de enero de 2001

El 1 de junio de 1995, el Municipio de Aguadilla --en adelante Municipio-- envió una carta a FirstBank de Puerto Rico -en adelante FirstBank-, los efectos de llegar a un acuerdo sobre el pago de la patente municipal correspondiente a la sucursal que dicha institución bancaria opera en la Carretera 107 de Aguadilla, Puerto Rico.

Ante la imposibilidad de lograr un acuerdo, el 23 de octubre de ese mismo año el Municipio cursó una segunda comunicación a FirstBank en solicitud de varios documentos; ello con el propósito de determinar su responsabilidad contributiva por las operaciones de la sucursal de Aguadilla. FirstBank se negó a proveer los documentos solicitados por entender que no

procedía tal requerimiento, de conformidad con las disposiciones de la Sección 37 de la Ley de Patentes Municipales; específicamente señaló FirstBank que dichos documentos no estaban relacionados con el cómputo de la contribución sobre patente municipal, por lo que no tenía obligación de proveer los mismos.

Luego de varios incidentes, el 23 de julio de 1996 el Municipio remitió a FirstBank una notificación de deficiencia final por la cantidad de $51,818.00.[1] El 20 de agosto, FirstBank presentó demanda ante el Tribunal de Primera Instancia, Sala Superior de San Juan, impugnando la deficiencia notificada. En esencia, sostuvo que de acuerdo con la Ley de Patentes Municipales, 21 L.P.R.A. sec. 651 *et seq.*, los bancos están obligados a pagar patente <u>únicamente en los municipios donde sus sucursales reciben y mantienen depósitos</u>; debido a ello, y por no recibir depósitos en la sucursal de Aguadilla, FirstBank adujo que no tenía obligación alguna de pagar patente al Municipio de Aguadilla.

El 13 de diciembre de 1996, el foro de instancia dictó sentencia revocando la determinación de deficiencia notificada por el Municipio de Aguadilla. Resolvió que a tenor con los términos de la Sección 651a(7)(B) de la Ley de Patentes Municipales, FirstBank no estaba obligada a pagar contribución por concepto de patente municipal, ya que no recibía depósitos en la sucursal de Aguadilla.[2] El Municipio solicitó reconsideración, la cual fue declarada no ha lugar.

Inconforme con el resultado, el Municipio de Aguadilla apeló ante el Tribunal de Circuito de Apelaciones sosteniendo que la Sección 651a(7)(B) no puede interpretarse de forma tal que se le prive del cobro de patentes por los ingresos realizados por FirstBank en la sucursal de Aguadilla; alegó que el factor determinante <u>debe ser el volumen de negocio</u>,

---

[1] El 21 de mayo de 1996, el Municipio notificó preliminarmente una deficiencia por la cantidad de $51,277.00. Inconforme, FirstBank solicitó una vista administrativa la cual fue celebrada el 23 de julio de ese mismo año.
[2] Según establecido por el tribunal de instancia, no hubo controversia en cuanto al hecho de que FirstBank no recibía depósitos en la sucursal de Aguadilla.

y que a base de dicho volumen se puede computar la patente a la que tiene derecho el Municipio.

El tribunal apelativo intermedio dictó sentencia revocatoria de la emitida por el tribunal de instancia; concluyó, en consecuencia, que FirstBank estaba obligado a pagar la deficiencia contributiva notificada por el Municipio de Aguadilla. Ante la negativa del foro apelativo de reconsiderar su decisión, FirstBank recurrió ante este Tribunal alegando que el foro apelativo intermedio había errado:

A.   ... al resolver restrictivamente por entender que FirstBank está reclamando una exención contributiva y no reconocer que FirstBank pagó la totalidad de la patente y la distribuyó entre los municipios de acuerdo a la fórmula de prorrateo establecida en la Ley de Patentes Municipales.

B.   ... al determinar que FirstBank viene obligada a prorratear parte de la contribución pagada por concepto de patentes tomando en consideración al Municipio de Aguadilla.

C.   ... al prorratear el monto de la patente a pagarse a base de la densidad poblacional del Municipio de Humacao, pues ya la ley claramente provee que el prorrateo debe ser realizado a base de una fórmula de depósitos.

El 13 de diciembre de 1999, la Asociación de Bancos de Puerto Rico solicitó intervención en el pleito, en calidad de *amicus curiae*, la cual fue autorizada por este Tribunal mediante Resolución emitida el 28 de enero de 2000. Por su parte, el Municipio de San Juan solicitó también participar en el proceso en igual calidad, petición que fue denegada.

Estando en condiciones de resolver el recurso radicado, procedemos a así hacerlo.

I

Los municipios son entidades jurídicas creadas por la Asamblea Legislativa en virtud del Artículo VI, Sección 1 de la Constitución de Puerto Rico[3]; debido a ello, solamente poseen los poderes expresamente delegados por el legislador. Una de las facultades concedidas a los municipios es la de imponer tributos en su demarcación territorial. A estos

---

[3] Esta disposición concede a la Asamblea Legislativa la facultad de "crear, suprimir, consolidar y reorganizar

efectos, la Sección 3 de la Ley de Patentes Municipales autoriza a las asambleas municipales de todos los municipios de nuestra Isla a imponer y cobrar patentes. 21 L.P.R.A. sec. 651b.

Contrario a otras jurisdicciones, en Puerto Rico se favorece una interpretación amplia del poder impositivo delegado a los municipios. Tal interpretación responde a una filosofía que tiende a conceder mayores poderes tributarios a los municipios, de forma que puedan proveer más servicios directos a sus ciudadanos. Lever Bros. Export Corp. v. Alcalde de San Juan, res. el 7 de marzo de 1996, 140 D.P.R. __ (1996), pág. 761; F.D.I.C. v. Mun. de San Juan, 134 D.P.R. 385, 392 (1993); American Express Co. v. Mun. de San Juan, 120 D.P.R. 339, 346 (1988); Arecibo Bldg. Corp. v. Mun. de Arecibo, 115 D.P.R. 76, 78 (1984).

En este sentido, la Ley de Municipios Autónomos dispone que "[l]os poderes y facultades conferidos a los municipios [...] se interpretarán liberalmente, [...] de forma tal que se propicie el desarrollo e implantación de la política pública enunciada en este subtítulo de garantizar a los municipios [las] facultades necesarias en el orden jurídico, fiscal y administrativo". 21 L.P.R.A. sec. 4002.

Hemos resuelto que los impuestos municipales "responden a la premisa de que los negocios sitos en su territorio se benefician de la organización local para efectuar sus actividades de interés pecuniario y, por tal razón, contribuyen al sostenimiento de las mismas". Banco Popular v. Mun. de Mayagüez, 120 D.P.R. 692, 700 (1988). El factor determinante será si el evento económico o la fuente del negocio que genera el ingreso está dentro o fuera de la municipalidad. Id.

Por su parte, y a tenor con lo antes expresado, la Ley de Patentes Municipales fue cimentada sobre el principio de prorrateo. De acuerdo con este principio, cada municipio deberá recibir el pago correspondiente de patente municipal por aquella actividad económica que se materializa dentro de su jurisdicción geográfica, independientemente de si la misma se devenga

---

municipios, modificar sus límites territoriales y determinar lo relativo a su régimen y función".

o contabiliza finalmente por una casa u oficina en otra municipalidad. <u>Lever</u>
<u>Bros. Export Corp.</u> v. <u>Alcalde de San Juan</u>, ante.

Hemos señalado que para validar la imposición del pago de patente
deberán concurrir los siguientes requisitos: (1) que la empresa o negocio
tenga un establecimiento comercial u oficina dedicada con fines de lucro
a la prestación de cualquier servicio en el municipio correspondiente; y
(2) <u>que exista una base sobre la cual se imponga la patente</u>. *Id.* pág. 762.

Como norma general, la patente impuesta en cada municipio será
computada utilizando como base el volumen de negocio. 21 L.P.R.A. sec.
651f(a). A partir de la Ley Núm. 113 de 10 de junio de 1974 --en adelante
Ley 113--, el concepto de volumen de negocios fue adaptado a los diferentes
casos contemplados por dicha legislación.[4] Cámara de Representantes,
Diario de Sesiones, 12ma Asamblea Legislativa, 21 de junio de 1974. <u>En el</u>
<u>caso específico de los bancos comerciales, la ley dispuso que el volumen</u>
<u>de negocios será</u> "los intereses recibidos o devengados de préstamos, los
cargos por servicios prestados, las rentas, el beneficio bruto en la venta
de propiedades o valores y las ganancias, beneficios e ingresos derivados
de cualquier otra procedencia dentro y fuera de Puerto Rico atribuibles
a la operación en Puerto Rico". 21 L.P.R.A. sec. 651a(7)(B). Véase también
la sección 2 de la Ley 113.

Debido a las dificultades confrontadas en la implementación de la Ley
113, la Asamblea Legislativa aprobó la Ley Núm. 4 de 14 de noviembre de
1974 --en adelante Ley 4--. Una de las enmiendas introducidas por esta
legislación, fue a los efectos de establecer, <u>de forma expresa</u>, que el
ingreso bruto devengado por los bancos comerciales sujeto al pago de
patente, <u>se distribuirá entre las sucursales de acuerdo con la proporción</u>

---

[4] La Ley 113 tuvo el efecto de ampliar las actividades comerciales e industrias sujetas al pago de patente. Informe de la Comisión de Hacienda de la Cámara de Representantes sobre el P. de la C. 1088 de 20 de junio de 1974, pág. 2. Véase también <u>Chase Manhattan Bank</u> v. <u>Mun. De San Juan</u>, 126 D.P.R. 759, 763 (1990).

que guarden todas las clases de depósitos de cada sucursal con los depósitos totales. 21 L.P.R.A. sec. 651a(7)(B). Véase sección 2 de la Ley 4.[5]

El propósito de esta disposición, según surge de su historial legislativo, fue establecer claramente que en los casos de estas entidades "la patente a pagarse a los municipios donde estén localizadas sucursales deberá determinarse sobre la base de la proporción que guarden los depósitos de todas clases en las sucursales con los depósitos totales de la organización". (Énfasis nuestro.) Informe de la Comisión de Hacienda de la Cámara de Representantes sobre el P. de la C. 1254 de 4 de noviembre de 1974, pág. 2. Véase también Informe de la Comisión de Hacienda del Senado sobre el P. de la C. 1254 de 6 de noviembre de 1974.

A través de esta medida, el legislador "creó una fórmula de distribución proporcional en la que el volumen de negocios de los bancos se determina de acuerdo con la proporción que guarden los depósitos de la sucursal localizada en el municipio con los depósitos totales de la organización financiera en Puerto Rico", esto en consideración a la naturaleza de la organización bancaria y su funcionamiento a través de sucursales. Banco Popular v. Mun. de Mayagüez, 126 D.P.R. 653, 663 (1990). Véase también Banco Popular v. Mun. de Mayagüez, ante, pág. 702.

En síntesis, la Asamblea Legislativa estableció un trato distinto a los bancos tomando en consideración su estructura particular. Por tal razón, estableció una base distinta --que envuelve una relación aritmética entre el volumen de negocios y los depósitos de cada sucursal en comparación a los depósitos totales-- sobre la cual ha de computarse la patente. Esta fórmula es una de aplicación mandatoria, según los términos utilizados por la ley y su historial legislativo.

Siendo esa la norma establecida por el legislador,[6] y no habiendo controversia en cuanto al hecho de que FirstBank no recibía depósitos en

---

[5] Esta sección fue enmendada posteriormente con el fin de aclarar que el prorrateo entre sucursales será sólo a base de los depósitos totales en Puerto Rico. 21 L.P.R.A. sec. 651a(7)(B).

la sucursal de Aguadilla, <u>forzoso resulta concluir que no concurre el</u> <u>segundo requisito establecido para que proceda la imposición de la patente</u>; esto es, <u>no</u> existe una base, de conformidad con la ley, sobre la cual ha de imponerse la patente en la sucursal de Aguadilla.[7]

Adviértase que los tribunales estamos obligados a respetar la voluntad legislativa, por lo que debemos abstenernos de sustituir los criterios establecidos por dicha rama de gobierno con aquéllos que consideremos justos, razonables y deseables. <u>Cuevas Santiago</u> v. <u>Ethicon División of</u> <u>Jonson & Jonson Profesional Company of Puerto Rico, Inc.</u>, res. el 30 de junio de 1999, 99 TSPR 107, 99 JTS 111. "Nuestra función es interpretar la ley y <u>no juzgar su bondad o sabiduría</u>. Por eso, <u>no</u> debemos frustrar los propósitos de un estatuto <u>cuando la letra es clara y</u> <u>expresa sin ambigüedad</u> <u>la intención del legislador</u>". (Énfasis nuestro.) <u>Famania</u> v. <u>Corp. Azucarera</u> <u>de P.R.</u>, 113 D.P.R. 654, 657-58 (1982).

Al respecto, reiteramos lo expresado hace años en <u>The Texas Company</u> v. <u>Domenech, Tes.</u>, 50 D.P.R. 432, 451 (1936), a los efectos de que <u>no</u> "...es función de este tribunal corregir las deficiencias que encuentre en una legislación sometida a su estudio e interpretación. Lo único que podemos hacer es señalar esas deficiencias, para que ellas sean corregidas por el Poder Legislativo." Véase también R.E. Vernier y J.A. Cuevas Segarra, <u>Aprobación e Interpretación de las Leyes en Puerto Rico</u>, 2da ed., Publicaciones JTS, 1987, pág. 299.

---

[6] Norma que, como hemos visto, surge claramente tanto del texto de la ley, como de su historial legislativo.

[7] La legislación contributiva deberá interpretarse de forma justa y a tenor con sus propios y expresos términos, evitando en todo momento una interpretación extensiva. <u>Talcott</u> <u>Inter-Amer. Corp.</u> v. <u>Registrador</u>, 104 D.P.R. 254, 262 (1975). Véase también <u>Director Of. Inspección Notarías</u> v. <u>Colón</u>, 131 D.P.R. 102, 118 (1992). Además, ante la amplia discreción que posee la Asamblea Legislativa tanto en el ejercicio de imponer y cobrar contribuciones --véase <u>U.S.</u> v. <u>Srio. de Hacienda</u>, 109 D.P.R. 456, 459 (1980)--, como en la determinación de lo relativo al régimen y función de los municipios --véase nota 1, ante--, concluimos que corresponde a ella atender cualquier asunto relacionado con el caso que hoy nos ocupa.

Finalmente, debemos aclarar que <u>no</u> nos encontramos ante un caso de exención contributiva, sino ante la interpretación de una disposición estatutaria que tiene el efecto de establecer una fórmula para la imposición de patente municipal, la cual priva al Municipio de Aguadilla de cobrar dicho impuesto sobre los ingresos generados por la sucursal de FirstBank localizada en Aguadilla.

Por los fundamentos antes expresados, procede revocar la sentencia emitida por el Tribunal de Circuito de Apelaciones, y devolver el caso al tribunal de primera instancia para procedimientos ulteriores consistentes con lo aquí resuelto.

Se dictará Sentencia de conformidad.


                        FRANCISCO REBOLLO LÓPEZ
                        Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


FirstBank de Puerto Rico

    Demandante-peticionario

        vs.                 CC-1999-937     CERTIORARI

Municipio de Aguadilla

    Demandado-recurrido


SENTENCIA

San Juan, Puerto Rico, a 17 de enero de 2001


       Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente, se dicta Sentencia revocatoria de la emitida en el presente caso por el Tribunal de Circuito de Apelaciones, devolviéndose el caso al tribunal de primera instancia para procedimientos ulteriores consistentes con lo aquí resuelto.

       Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Fuster Berlingeri disiente sin opinión escrita.


                    Isabel Llompart Zeno
                      Secretaria del Tribunal Supremo